## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

COLLEEN BENNETT-HOUSTON,    )
                           )
    Plaintiff,    )
                           )
v.    )    No. 18-cv-3283
                           )
ILLINOIS DEPARTMENT OF    )
CORRECTIONS,    )
                           )
    Defendant.    )

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

For the past decade, Plaintiff Cynthia Bennett-Houston has
served as a chaplain for the Illinois Department of Corrections
(IDOC), ministering to prisoners at IDOC's Lincoln Correctional
Center and their families.  In March 2016, Rev. Bennett-Houston
told IDOC's Assistant Director that she intended to file a complaint
with the Equal Employment Opportunity Commission (EEOC).
She believed that Lincoln and its warden had discriminated
against her based on her gender.  Eight days later, IDOC moved to
fire Rev. Bennett-Houston.

IDOC claimed that Rev. Bennett-Houston had socialized improperly with prisoners and their spouses. Rev. Bennett-Houston disputed that characterization, contending instead that her relationships were purely "pastoral" and professional. Nearly two years of union-management mediation and arbitration ensued. In 2018, an arbitrator concluded that IDOC's decision and its stated rationale were unsupported by the evidence. He ordered Rev. Bennett-Houston reinstated and made whole.

Rev. Bennett-Houston eventually returned to fewer duties, a smaller office, and a replacement occupying her role as Lincoln's Chaplain. She later brought this lawsuit under Title VII of the Civil Rights Act of 1964, alleging that IDOC retaliated against her for engaging in protected workplace conduct.

This matter comes before the Court on IDOC's Motion for Summary Judgment. See d/e 39. Because a reasonable juror could find that IDOC acted in retaliation against Rev. Bennett-Houston, IDOC's motion is DENIED.

# I.  BACKGROUND

The Court draws the following facts from the parties'
statements of undisputed facts and the evidence they submitted.[1]
The Court deems admitted those facts not in dispute and any facts
disputed without an evidentiary basis.  See L.R. 7.1(D)(2)(b)(2).

Plaintiff Cynthia Bennett-Houston is a minister and an
employee of the Illinois Department of Corrections (IDOC).  In the
fall of 2012, IDOC hired Rev. Bennett-Houston as a Chaplain I and
assigned her to the Logan Correctional Center.  She transferred to
the Lincoln Correctional Center the following spring.

Kess Roberson was Logan's warden when Rev. Bennett-
Houston joined its staff.  Mr. Roberson became Lincoln's warden
shortly before Rev. Bennett-Houston's transfer.  Between the
spring of 2013 and Warden Roberson's departure from Lincoln in
2019, Rev. Bennett-Houston accused Warden Roberson of gender
discrimination on several occasions.  She "first complained

_____

[1] The parties' initial summary judgment briefings omitted certain
exhibits.  Pursuant to a text order dated July 19, 2022, Rev.
Bennett-Houston filed an amended response to IDOC's motion for
summary judgment.  See d/e 51.  IDOC also filed a supplement to
its motion for summary judgment.  See d/e 52.  Accordingly, the
Court will refer to Plaintiff's Amended Response to IDOC's Motion
for Summary Judgment in lieu of her original filing.

internally at IDOC about discrimination by Warden Roberson in 2013," charging that he "continually made what she perceived as demeaning, gender-based comments about her hair." <u>See</u> Def.'s Reply, d/e 47, at 2. In January 2014, Rev. Bennett-Houston filed with the EEOC a sex-discrimination complaint to that effect. She received a written reprimand for violating IDOC's standards of conduct soon after.

Rev. Bennett-Houston took a leave of absence from June to September 2015. The parties agree that Rev. Bennett-Houston took a four-month leave of absence but disagree as to the reasons for her leave. IDOC characterizes it as a "non-service-connected leave of absence." Rev. Bennett-Houston states that her leave "was caused by the hostile-work environment she was experiencing," and her physician's disability-leave authorization form indicates that Rev. Bennett-Houston suffered from anxiety, depression, and insomnia.

In early September 2015, shortly before Rev. Bennett-Houston returned to work, Warden Roberson "overheard an inmate saying [Rev. Bennett-Houston] would be back to work soon, when the Warden did not have that information." Def.'s Supp. ex. 7, d/e

52-2, at 16 (hereafter "Arbitral Award").  Warden Roberson then directed Lieutenant Trey Dawdy, an IDOC Internal Affairs officer, to "look into Plaintiff's communications."  <u>See</u> Def.'s Mot., d/e 39, at 3.  Several months of telephone and physical monitoring of Rev. Bennett-Houston followed.  Beginning in September or October 2015, and acting on Warden Roberson's instructions, Lieutenant Dawdy "listened to months of phone calls between inmates and their wives."  <u>See</u> Arbitral Award at 16.  Lieutenant Dawdy also subpoenaed Rev. Bennett-Houston's personal and office phone records for the month preceding her return to Lincoln.  <u>See</u> Def.'s Mot. ex. 11, d/e 39-11, at 2–3.  Lieutenant Dawdy "did not begin documenting the investigation until December."  <u>Id.</u>

On December 5, 2015, Lieutenant Dawdy emailed Lieutenant Joe Jennings, an IDOC Intelligence Coordinator, with an update on the investigation.  Lieutenant Dawdy advised Lieutenant Jennings that he would "try to gather some more info but more than likely close the case unsubstantiated."  <u>Id.</u> at 3.  Lieutenant Dawdy also wrote that he would "have C/I's [confidential informants] continue to gather any intel they have pertaining to this and if needed can go a different direction with it if any misconduct happens."  <u>Id.</u>

On December 13, Lieutenant Dawdy advised Lieutenant Jennings that the investigation had been renewed. Lieutenant Dawdy wrote that while he "was typing up the case today so [he] could close it," he had discovered additional entries of interest in Rev. Bennett-Houston's subpoenaed phone records. Id. at 2. According to Lieutenant Dawdy, Rev. Bennett-Houston had received a five-minute phone call from the father of a Lincoln inmate and exchanged several text messages with the wives of two other inmates. Lieutenant Dawdy also included a request from Warden Roberson, who asked that "External" handle any further investigation into Rev. Bennett-Houston "due to Chaplain filing harassment charges on [Warden Roberson] in the past." See id. Lieutenant Jennings forwarded Lieutenant Dawdy's email to IDOC Deputy Commander Justin Wilks, who assigned the matter to IDOC investigator John Greenan.

"[Lieutenant] Dawdy, however, continued to investigate the matter, sharing his additional findings with Greenan" and other IDOC officers. See Arbitral Award at 10. For instance, in early January 2016, Lieutenant Dawdy informed Lieutenant Jennings that he had identified an additional seventeen calls made over the

Page **6** of **23**

preceding few months from Rev. Bennett-Houston's office line to individuals associated with Lincoln inmates.  On January 8, at Warden Roberson's request, Lieutenant Dawdy wrote Mr. Greenan to ask whether there were grounds to "lock[] the Chaplain out," and whether a rumor that Rev. Bennett-Houston "was going to the media about this for harassment . . . would affect the investigation."  See Pl.'s Am. Resp. ex. 4, d/e 51-2, at 1.

Meanwhile, Lieutenant Dawdy and Warden Roberson continued to receive reports about Rev. Bennett-Houston's activities inside and outside the Lincoln Correctional Center.  On January 8, a shift supervisor reported that Rev. Bennett-Houston had made an unusual request: to set up a call between a prisoner in solitary confinement and his wife, who wished to tell her husband of his brother's death.  On January 10, another officer reported that Rev. Bennett-Houston had solicited prayers for three members of her choir—whom she called her "sons"—who were then being held in investigative solitary confinement.  See id. at 12.  On January 12, officers searched one of those prisoners' cells and found a copy of a book authored by Rev. Bennett-Houston's husband, entitled "There is Life After Drugs – How Bad Do You

Want It?"  See id.  And on January 13, a correctional officer reported that Rev. Bennett-Houston had hugged a prisoner in Lincoln's reception area just before his release from custody.

IDOC investigators interviewed Rev. Bennett-Houston on two occasions.  Rev. Bennett-Houston reported to them that her relationships with prisoners and their loved ones were "pastoral" in nature.  She provided them with an "[IDOC] Program and Services inventory for Chaplaincy," which referenced "one on one counseling by staff Chaplains including emergency/crisis counseling, requests for referral counseling, visits to segregation and community hospitals, and pre-marital and family counseling." Id. at 13.  When the investigators asked Rev. Bennett-Houston "about long distance calls from her office phones, she said she often made calls to family members at the request of inmates, and that she did not log those calls." Id.

Sometime in late January, IDOC Assistant Director Gladys Taylor informed Rev. Bennett-Houston that the investigation had concluded and that no disciplinary action would be taken.  On March 1, Rev. Bennett-Houston sent a follow-up email to Assistant Director Taylor.  Rev. Bennett-Houston wrote that, although she

had "tried to lay low and not say anything" since the investigation ended, "things [had] continued to become unbearable."  See Pl.'s Am. Resp. ex. 9, d/e 51-3, at 4.  Rev. Bennett-Houston advised Assistant Director Taylor that she would be filing "an EEOC charge against the Administration here at Lincoln."  Id.

Eight days later, IDOC served Rev. Bennett-Houston with a notice of termination.  The notice alleged that Rev. Bennett-Houston's improper relationships with prisoners and their families, as well as her failure to document her communications with them, warranted immediate disciplinary action.  On March 21, Rev. Bennett-Houston formally filed with the EEOC a complaint alleging sex discrimination and retaliation.

On March 29, IDOC brought Rev. Bennett-Houston before an employee review board.  The hearing officer—Warden Roberson's executive assistant—concluded that Rev. Bennett-Houston's contacts with prisoners and their loved ones were "inappropriate" and found her "guilty of socializing through her texts and calls." See Arbitral Award at 13–14.  IDOC suspended Rev. Bennett-Houston without pay on May 9 and terminated her employment on June 6.  IDOC's final notice of termination stated that Rev.

Bennett-Houston's "blatant violation of this Agency's Standards of Conduct, including the seriousness. [sic] and nature of the infractions warrant[ed] harsher penalties." Id. at 15.

Rev. Bennett-Houston and her union grieved the termination pursuant to their collective-bargaining agreement. In January 2018, after nearly two years of mediation, the grievance was referred to an experienced labor-relations arbitrator for hearing. The arbitrator took evidence and heard testimony from nearly a dozen witnesses. That evidence, the arbitrator concluded, compelled the finding that IDOC "did not have just cause to terminate" Rev. Bennett-Houston. Id. at 34. He found "no evidence at all of any knowing, improper socialization by [Rev. Bennett-Houston]." Id. at 32. He further found no "inherently improper conduct or nefarious motive," no "element of personal gain or advantage," and no "evidence of any actual social relationship." Id. at 31–32.

The arbitrator concluded that Rev. Bennett-Houston's "actual conduct was not something that demanded formal discipline, much less termination, unless she persisted in it after being counseled." Id. at 33. Instead, the arbitrator determined,

"[e]verything that [Rev. Bennett-Houston] is said to have done is arguably related to the performance of her job duties." Id. at 32. And while IDOC "was aware of [Rev. Bennett-Houston's] conduct for an extended period of time before moving to fire her," IDOC had done "nothing to correct her understanding of her obligations, or in any other way to change her behavior." Id. at 33. The arbitrator ordered IDOC to immediately reinstate Rev. Bennett-Houston, vacate her disciplinary record, and award her all back pay and suspended benefits. See id. at 34.

The arbitrator filed his award in mid-February. More than a month passed before Rev. Bennett-Houston was reinstated or received any compensation. When she returned, she had fewer duties, a smaller office, and another Chaplain occupying her position. As of April 2022, Rev. Bennett-Houston still had not had "approximately 30 paid benefit days restored to her as required by the [a]rbitration award." See Def.'s Reply, d/e 47, at 7.

On August 15, 2018, Rev. Bennett-Houston received a right-to-sue letter as to her March 15, 2016, EEOC complaint. See Pl.'s Am. Compl. ex. 1, d/e 5-1, at 14. She received right-to-sue letters as to two related EEOC complaints—filed on October 3, 2016, and

July 24, 2018—on August 18 and August 3, respectively.  See id. at 16 (October 2016 complaint); id. at 20 (July 2018 complaint). Rev. Bennett-Houston then brought this lawsuit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., alleging that IDOC retaliated against her for engaging in protected workplace conduct.  See Am. Compl, d/e 8.  She seeks lost wages, compensatory damages, and attorney's fees.  Id. at 13.

IDOC now moves for summary judgment.  See Def.'s Mot. Summ. J., d/e 39.  Although Rev. Bennett-Houston's complaint alleges a single count of retaliation, the bulk of IDOC's motion concerns a sex-discrimination claim.  This order, therefore, addresses only the claim now before the Court.

## II. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of any genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

A genuine dispute of material fact exists if a reasonable trier of fact could find in favor of the nonmoving party.  <u>Carroll v. Lynch</u>, 698 F.3d 561, 564 (7th Cir. 2012).  At summary judgment, the Court construes all facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  <u>Woodruff v. Mason</u>, 542 F.3d 545, 550 (7th Cir. 2008).

### III. ANALYSIS

At issue is a single retaliation claim.  Title VII of the Civil Rights Act of 1964 prohibits an employer from taking some adverse action against an employee—that is, retaliating—"because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing."  <u>Igasaki v. Ill. Dep't of Fin. and Prof. Reg.</u>, 988 F.3d 948, 959 (7th Cir. 2021) (quoting 42 U.S.C. § 2000e-3(a)).  Here, Rev. Bennett-Houston alleges that IDOC violated Title VII by attempting to fire her without just cause, delaying her reinstatement, and later subjecting her to harassment and arbitrary discipline.

Rev. Bennett-Houston brings these allegations under the "direct" method of proof, forgoing the burden-shifting "indirect" method established in <u>McDonnell Douglas Corp. v. Green</u>, 411

U.S. 792 (1973).  To survive IDOC's motion for summary judgment,
Rev. Bennett-Houston must offer evidence from which a reasonable
juror could find (1) that she engaged in an activity protected by
Title VII; (2) that she suffered an adverse employment action; and
(3) that there is a causal link between the protected activity and
the adverse action, such that a juror could infer retaliatory intent.
See Lewis v. Wilkie, 909 F.3d 858, 866 (7th Cir. 2018) (citing 42
U.S.C. 2000e-3(a)).

### A.   Rev. Bennett-Houston Engaged in a Protected Activity and Suffered an Adverse Employment Action.

The undisputed record demonstrates that Rev. Bennett-
Houston complained of sex discrimination to IDOC's second-in-
command.  The same record also shows that IDOC served Rev.
Bennett-Houston with dismissal charges.  This series of events
satisfies Title VII's threshold requirements.

First, a Title VII claimant engages in "protected activity" when
he takes "some step in opposition to a form of discrimination that
the statute prohibits."  O'Leary v. Accretive Health, Inc., 657 F.3d
625, 631 (7th Cir. 2011).  While the record reflects several
instances of protected activity, only one is temporally relevant

here.  On March 1, 2016—a week before IDOC moved to fire Rev. Bennett-Houston—she advised Assistant Director Taylor that she intended to file a sex-discrimination complaint with the EEOC. See Def.'s Reply, d/e 47, at 3 (characterizing the substance and timing of March 1 email as "undisputed and immaterial").  Sending that email comprised an activity protected by Title VII.  See, e.g., Magyar v. Saint Joseph Reg'l Med. Ctr., 544 F.3d 766, 772 (7th Cir. 2008) (finding that a Title VII plaintiff "engaged in a statutorily protected activity when she complained up the chain of command"); see also Answer, d/e 9, at ¶ 72 ("Defendant admits Plaintiff engaged in activity protected by Title VII by complaining about unlawful discrimination[.]").

Second, a Title VII claimant suffers an adverse employment action when an employer "materially alter[s] the terms and conditions of employment."  Dass v. Chicago Bd. of Educ., 675 F.3d 1060, 1069 (citation omitted).  This includes any action "in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination."  See id. (citing Nichols v. S. Ill. Univ.-Edwardsville, 510 F.3d 772, 780 (7th Cir. 2007)).  The undisputed record reflects

that "just 8 days after she told [IDOC Assistant Director] Taylor she would be filing a charge with EEOC . . . Plaintiff was served with dismissal charges." See Def.'s Reply, d/e 47, at 7–8. That suffices as an adverse employment action.

**B. Because a Reasonable Jury Could Infer Retaliatory Intent, IDOC Cannot Receive Summary Judgment.**

Title VII requires a "causal connection between" an employee's statutorily protected activity and an adverse employment action to sustain a claim of retaliation. Magyar, 544 F.3d at 770 (citation omitted). At summary judgment, the key inquiry is whether "a reasonable juror could find based on all available evidence that a retaliatory motive" lay behind IDOC's decision to fire Rev. Bennett-Houston. See Grant v. Trs. of Ind. Univ., 870 F.3d 562, 569 (7th Cir. 2017) (cleaned up).

Rev. Bennett-Houston alleges that the weeklong window between her email to Assistant Director Taylor and her receipt of dismissal charges supports an inference of retaliation. She also offers evidence to suggest that IDOC's stated rationale—improper socialization—was pretextual. IDOC argues that the evidence supports neither claim. The Court, however, disagrees.

### 1. A reasonable juror could find "suspicious timing."

The first question is that of timing.  An adverse action may come "so close on the heels of a protected act that an inference of causation is sensible."  Loudermilk v. Best Pallet Co., LLC, 636 F.3d 312, 315 (7th Cir. 2011).  The Seventh Circuit has never imposed a "bright-line numeric rule" in determining whether the timing of an adverse action is sufficiently "suspicious."  See Coleman v. Donahoe, 667 F.3d 835, 861 (7th Cir. 2012).  However, "when there is corroborating evidence of retaliatory motive . . . an interval of a few weeks or even months may provide probative evidence of the required causal nexus."  See id.; see also Magyar, 544 F.3d at 772 (noting that the Seventh Circuit "has found a month short enough to reinforce an inference of retaliation").

Rev. Bennett-Houston and IDOC dispute "whether the window of time in this case was narrow enough to be suspicious," see id., and which window of time ought to be considered.  Rev. Bennett-Houston suggests that the relevant measure is the time between her email to Assistant Director Taylor (March 1) and IDOC's service of dismissal charges (March 9).  She contends that this brief lapse is itself evidence of retaliatory intent sufficient to

defeat summary judgment. IDOC argues that its investigation into Rev. Bennett-Houston predated her email by more than six months, therefore severing any alleged causal link.

Viewing the evidence and drawing all reasonable inferences in Rev. Bennett-Houston's favor, the Court finds that a reasonable juror could infer retaliatory intent from the record alone. That record shows that IDOC initially declined to take disciplinary action after concluding its investigation. The record shows that a month later, and despite having been cleared of wrongdoing, Rev. Bennett-Houston told Assistant Director Taylor that she planned to pursue a sex-discrimination claim against Lincoln and IDOC. And the record shows that a week after that, IDOC reversed itself and notified Rev. Bennett-Houston of its intent to fire her.

In sum, the record indicates that IDOC first found the evidence against Rev. Bennett-Houston insufficient to take any adverse action—but then found the same evidence more than enough to warrant her termination. The only intervening event was Rev. Bennett-Houston's protected activity. "Even if the sequence of events alone would not be enough by itself, this sequence of protected activity and punitive action could lend some

support to a reasonable juror's inference of retaliation." <u>Coleman</u>, 667 F.3d at 861.  In such a case, a "juror, not a judge, should decide whether the inference is appropriate." <u>Loudermilk</u>, 636 F.3d at 315.

### 2. A reasonable juror could find IDOC's explanation pretextual.

Suspicious timing "is rarely enough by itself" to defeat summary judgment. <u>Tibbs v. Admin. Office of the Ill. Courts</u>, 860 F.3d 502, 505 (7th Cir. 2017).  But when paired with "other evidence that the employer's explanation for the adverse action was pretext for retaliation," suspicious timing may raise an inference of a causal connection.  See <u>id.</u>; <u>see also</u> <u>Magyar</u>, 544 F.3d at 772.  The next question, then, concerns pretext: that is, whether a reasonable juror could find IDOC's stated rationale for firing Rev. Bennett-Houston a cover for unlawful retaliation.

IDOC argues that no reasonable juror could reach that conclusion.  IDOC argues that its proffered rationale—improper socialization with prisoners and their families—was legitimate and non-discriminatory.  And IDOC argues that Rev. Bennett-Houston has failed to offer evidence that the timing of her firing was

something other than a coincidence.  Yet the Court finds that Rev.

Bennett-Houston's "timing evidence does not stand alone."  See

Coleman, 667 F.3d at 861.  Indeed, Rev. Bennett-Houston has

offered ample evidence from which a reasonable juror could infer

that IDOC's stated grounds were pretext for retaliation.

IDOC, as noted above, has offered a legitimate,

nondiscriminatory reason for taking adverse action against Rev.

Bennett-Houston.  "[I]t is not the court's concern that an employer

may be wrong about its employee's performance, or may be too

hard on its employee.  Rather, the only question is whether the

employer's proffered reason was pretextual, meaning that it was a

lie."  O'Leary v. Accretive Health, Inc., 657 F.3d 625, 635 (7th Cir.

2011).  To survive summary judgment, Rev. Bennett-Houston must

"identify such weaknesses, implausibilities, inconsistencies, or

contradictions" in IDOC's stated rationale "that a reasonable

person could find [it] unworthy of credence."  Boumehdi v. Plastag

Holdings, LLC, 489 F.3d 781, 792 (7th Cir. 2007).

The evidence of pretext in this case largely "is recounted in

the arbitrator's findings."  See Coleman, 667 F.3d at 854 (citing

Loudermilk, 636 F.3d at 315).  An arbitral award, of course, is not

owed "preclusive effect."  See id.  But an arbitral award "may be admitted as evidence and accorded such weight as the court deems appropriate."  Alexander v. Gardner-Denver Co., 415 U.S. 36, 60 (1974).  Here, both IDOC and Rev. Bennett-Houston submitted the arbitral award as evidence.  Both parties' summary judgment briefings rely heavily on the arbitrator's findings.  And those findings were based on an exhaustive review of the evidence and on testimony given by nearly a dozen witnesses.  The Court finds no reason to accord the arbitral award less credence than do the parties.

Viewing the arbitral award in the light most favorable to Rev. Bennett-Houston, the Court concludes that the arbitrator's findings provide substantial "evidence of pretext in the form of context."  See Coleman, 667 F.3d at 854.   For instance, evidence that an employer's stated rationale was "insufficient to motivate" an adverse employment action may be contextually probative of a claim of pretext.  Tibbs, 860 F.3d at 506.  The arbitrator reached precisely that conclusion.  See Arbitral Award at 33 (finding that Rev. Bennett-Houston's alleged misconduct "was not something that demanded formal discipline, much less termination, unless

she persisted in it after being counseled"). A reasonable juror, therefore, could find that Rev. Bennett-Houston's firing was preordained and that its rationale was immaterial.

Similarly, evidence that an employer relied on overly subjective criteria or neglected its own procedures in taking an adverse action also may give rise to an inference of pretext. See, e.g., Guinto v. Exelon Generation Co., LLC, 341 F. App'x 240, 246 (7th Cir. 2009) (citing Rudin v. Lincoln Land Cmty. Coll., 420 F.3d 712, 727 (7th Cir. 2005)). The arbitrator determined that IDOC's "rules and standards . . . as they exist would suggest that purely professional contacts were expected," not sanctionable. See Arbitral Award at 33. He also found that IDOC's decision to seek Rev. Bennett-Houston's immediate termination, rather than to suspend or counsel her, could not be squared with her contract's "commitment to progressive and corrective discipline." Id.; see also id. at 3 (quoting collective-bargaining agreement provisions requiring "progressive" imposition of disciplinary measures, including oral and written reprimands, before termination). A reasonable juror could infer from these findings that IDOC was

intent on retaliating against Rev. Bennett-Houston—regardless of the evidence.

Title VII "does not require employers to have 'just cause' for sacking a worker." Loudermilk, 636 F.3d at 315 (citing Pollard v. Rea Magnet Wire Co., 824 F.2d 557 (7th Cir. 1987)). At the same time, however, an employer "who advances a fishy reason takes the risk that disbelief of the reason will support an inference that it is a pretext for discrimination." Id. "The point is only that if the inference of improper motive can be drawn, there must be a trial." Shager v. Upjohn Co., 913 F.2d 398, 401 (7th Cir. 1990). Because a reasonable juror could draw such an inference, IDOC's motion for summary judgment must be denied.

### IV. CONCLUSION

For these reasons, IDOC's Motion for Summary Judgment (d/e 39) is DENIED.

**ENTERED: NOVEMBER 8, 2022**

**FOR THE COURT:**

s/ *Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**